UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————————

CHERYL ANN TORRES,

                                        Plaintiff,

               -vs-                                    13-CV-341-JTC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                                        Defendant.

———————————————————————————

APPEARANCES:   LAW OFFICES OF KENNETH HILLER (KENNETH HILLER, ESQ.,
               of Counsel) Buffalo, New York, for Plaintiff.

               WILLIAM J. HOCHUL, JR., United States Attorney (MARY K.
               ROACH, Assistant United States Attorney, of Counsel), Buffalo, New
               York, for Defendant.

       This matter has been transferred to the undersigned for all further proceedings, by

order of Chief United States District Judge William M. Skretny dated December 15, 2014

(Item 19).

       Plaintiff Cheryl Ann Torres initiated this action on April 5, 2013, pursuant to the

Social Security Act, 42 U.S.C. § 405(g) ("the Act"), for judicial review of the final

determination of the Acting Commissioner of Social Security ("Commissioner") denying

plaintiff's application for Supplemental Security Income ("SSI") benefits under Title XVI of

the Act.  Both parties have moved for judgment on the pleadings pursuant to Rule 12(c)

of the Federal Rules of Civil Procedure (see Items 13, 16).  For the following reasons,

plaintiff's motion is denied, and the Commissioner's motion is granted.

## BACKGROUND

Plaintiff was born on November 30, 1970 (Tr. 32, 125).[1]  She filed an application for SSI on April 30, 2009, alleging disability due to hip and back pain beginning on August 10, 2007, when she fell and injured her hip while working as a prison guard at a corrections facility in Lawton, Oklahoma (Tr. 40-42, 101-06).  This claim was denied administratively on September 29, 2009 (*see* Tr. 66-69).  Plaintiff requested a hearing, which was held on May 19, 2011, before Administrative Law Judge ("ALJ") Robert T. Harvey (Tr. 27-60). Plaintiff appeared and was represented by counsel at the hearing.  She testified that she had a history of low back pain radiating to both legs, numbness in the right knee and hip, and muscle spasms in her right calf and ankle. She underwent total right hip replacement surgery in June 2009.  She also complained of bilateral wrist and knee pain, anxiety, and fibromyalgia (*see* Tr. 33-38).

On June 15, 2011, ALJ Harvey issued a decision finding that plaintiff was not disabled within the meaning of the Act (Tr. 11-21).  Following the five-step sequential evaluation process outlined in the Social Security Administration regulations governing claims under Title XVI (*see* 20 C.F.R. § 416.920), the ALJ found that plaintiff had not engaged in substantial gainful activity since the application date (Tr. 16), and that plaintiff's medically determinable impairments (identified as status post total right hip replacement and low back pain), while "severe," did not meet or medically equal the criteria of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings") (Tr. 16-17). The ALJ then discussed the evidence in the record regarding plaintiff's medically

---

[1]Parenthetical numeric references preceded by "Tr." are to pages of the administrative transcript filed by the Commissioner at the time of entry of notice of appearance in this action (Item 5).

determinable impairments– including medical records and opinion evidence obtained from treating and consultative sources, reports of diagnostic testing, and plaintiff's hearing testimony and statements about her activities of daily living and the limiting effects of her pain and other symptoms–and determined that plaintiff had the residual functional capacity ("RFC") to perform sedentary work (as defined in the regulations at 20 C.F.R. § 416.967(a)),[2] limited to jobs that did not involve working in areas with unprotected heights; climbing ropes, ladders or scaffolds; or working around heavy, moving or dangerous machinery, and further limited to jobs involving only occasional bending, climbing, stooping, squatting, kneeling, balancing, and crawling (Tr. 17-20).   Given this RFC assessment, the ALJ found that plaintiff was unable to perform her past relevant work as a corrections officer (Tr. 20), but considering her age, education, and past work experience in conjunction with Rule 201.28 of the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2 (the "Grids"), the ALJ determined that plaintiff could make a successful adjustment to other work that exists in significant numbers in the national economy, and therefore she has not been disabled within the meaning of the Act at any time since April 30, 2009, the date her SSI application was filed (Tr. 20-21).

---

[2]     Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a)

This decision became the final determination of the Commissioner on February 7, 2013, when the Appeals Council denied plaintiff's request for review (Tr. 1-4), and this action followed.

In her motion for judgment on the pleadings, plaintiff contends that the Commissioner's determination should be reversed, or remanded for further consideration, because the ALJ (1) failed to consider the evidence of plaintiff's mental impairment at any step of the sequential evaluation; (2) failed to properly consider plaintiff's subjective complaints of pain in assessing RFC; (3) failed to discharge his affirmative duty to develop the record with respect to plaintiff's deteriorating condition during the period from March 2010 to June 15, 2011 (the date of decision); and (4) failed to consider whether plaintiff qualified for a closed period of disability between August 2007 and September of 2009. *See* Item 13-1.  The government contends that the Commissioner's determination should be affirmed because the ALJ's decision is based on substantial evidence in the record, and was made in accordance with the requirements of the regulations and pertinent legal standards.  *See* Item 16-1.

## DISCUSSION

### I.    Scope of Judicial Review

The Social Security Act provides that, upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner … as to any fact, if supported by substantial evidence, shall be conclusive …."   42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion."  *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229

(1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).  The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts.  *Giannasca v. Astrue*, 2011 WL 4445141, at *3 (S.D.N.Y. Sept. 26, 2011) (citing *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)).

Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner.  *Richardson*, 402 U.S. at 401; *see also Cage v. Comm'r of Soc. Servs.*, 692 F.3d 118, 122 (2d Cir. 2012).  The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Hart v. Colvin*, 2014 WL 916747, at *2 (W.D.N.Y. Mar. 10, 2014).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards."  *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis. 1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at *2 (W.D.N.Y. Mar. 20, 2000); *Nunez v. Astrue*, 2013 WL 3753421, at *6 (S.D.N.Y. July 17, 2013) (citing *Tejada*, 167 F.3d at 773).  "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations."  *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted).  Thus, the Commissioner's determination cannot be upheld when it is based on an erroneous view of the law, or misapplication of the regulations, that disregards highly probative evidence.  *See Grey v.*

*Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) ("Failure to apply the correct legal standards is grounds for reversal."), *quoted in McKinzie v. Astrue*, 2010 WL 276740, at *6 (W.D.N.Y. Jan. 20, 2010).

If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision.  42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied … the court shall review only the question of conformity with [the] regulations …."); *see Kohler*, 546 F.3d at 265.  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).  Even where there is substantial evidence in the record weighing against the Commissioner's findings, the determination will not be disturbed so long as substantial evidence also supports it.  *See Marquez v. Colvin*, 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998) (upholding the Commissioner's decision where there was substantial evidence for both sides)).

In addition, it is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant." *Carroll v. Sec'y of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983); *cf. Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. Sept. 5, 2013).  "Genuine conflicts in the medical evidence are for the Commissioner to resolve," *Veino*, 312 F.3d at 588, and the court "must show special deference" to credibility determinations made by the ALJ, "who

-6-

had the opportunity to observe the witnesses' demeanor" while testifying. *Yellow Freight Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir. 1994).

## II.     Standards for Determining Eligibility for Disability Benefits

To be eligible for SSI benefits under the Social Security Act, plaintiff must present proof sufficient to show that she suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months …," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy …." 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. § 416.905(a).  As indicated above, the regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits. *See* 20 C.F.R. § 416.920.  First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity. If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is a medically determinable physical or mental impairment, or combination of impairments, that has lasted (or may be expected to last) for a continuous period of at least 12 months which "significantly limits [the claimant's] physical or mental ability to do basic work activities …." 20 C.F.R. § 416.920(c); *see also* § 416.909 (duration requirement).  If the ALJ finds that the claimant's impairment or combination of impairments is not severe, or is not of qualifying duration, the sequential evaluation ends at step two, and the claim is denied. *See* 20 C.F.R. § 416.920(a)(4)(ii).

If the severity and duration requirements are met, the ALJ then determines at the third step whether the claimant's impairment meets or equals the criteria of an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). If the impairment meets or equals a listed impairment, the claimant will be found to be disabled. If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant has the residual functional capacity to perform his or her past relevant work. If the claimant has the RFC to perform his or her past relevant work, the claimant will be found to be not disabled, and the sequential evaluation process comes to an end. Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing any work which exists in the national economy, considering the claimant's age, education, past work experience, and RFC. *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Lynch v. Astrue*, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008).

The claimant bears the burden of proof with respect to the first four steps of the analysis. If the claimant meets this burden, a limited evidentiary burden shifts to the Commissioner to show that there exists work in the national economy that the claimant can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009); 20 C.F.R. § 416.960(c)(2). "In the ordinary case, the Commissioner meets h[er] burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids), … [which] take into account the claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience." *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999) (internal quotation marks, alterations and citations omitted). If, however, a claimant has non-exertional

limitations (which are not accounted for in the grids) that "significantly limit the range of work permitted by his exertional limitations then the grids obviously will not accurately determine disability status …." *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (internal quotation marks and citation omitted).  In such cases, "the Commissioner must 'introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the national economy which claimant can obtain and perform.' " *Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 603).  Where the record supports a finding that the claimant's non-exertional limitations would have little or no effect on the occupational base of unskilled work, the ALJ may properly rely on the Grids as a framework for decisionmaking, without consulting with a vocational expert, to satisfy the Commissioner's burden at the final step of the sequential evaluation.  *Cornell v. Colvin*, 2014 WL 1572342, at *9 (W.D.N.Y. Apr. 18, 2014) (citing *Zabala v. Astrue*, 595 F.3d 402, 410–11 (2d Cir. 2010); *Bapp*, 802 F.2d at 605-06).

### III.   The ALJ's Disability Determination

As discussed above, in this case the ALJ followed the five-step evaluation process, finding at step one that plaintiff had not engaged in substantial gainful activity since her alleged disability onset date (Tr. 16), and at step two, that plaintiff's impairments (status post total right hip replacement and low back pain) were severe within the meaning of the regulations because they caused significant limitation of her ability to perform basic work activities (*id.*).

At step three, the ALJ found that the medical evidence did not establish that these impairments were severe enough to meet or equal the requirements of Listing 1.02 (Major

dysfunction of a joint) or Listing 1.04 (Disorders of the spine) (Tr. 16-17).  The ALJ then found that plaintiff retained the functional capacity to lift/carry or push/pull 10 pounds, stand and/or walk for two hours in an eight-hour workday, and sit for six hours in an eight-hour workday.  She was able to occasionally bend, climb, stoop, squat, kneel, balance, and crawl, but she could not work in areas with unprotected heights; climb ropes, ladders or scaffolds; or work around heavy, moving or dangerous machinery (Tr. 17).  In making this determination, the ALJ found plaintiff's testimony and statements of record regarding the intensity, persistence, and limiting effects of her pain and other symptoms to be generally credible, but found that plaintiff's testimony regarding her activities of daily living (indicating that she was able to clean, cook, wash dishes, make the beds, vacuum, mop, shop, visit, drive, bathe, and dress herself) was inconsistent with her allegations of disability (Tr. 17-18).  The ALJ then discussed the medical evidence, including reports of x-rays, CT scans, MRIs, and other diagnostic exams, and records from treating, examining, and consultative medical sources covering the period from the onset of her alleged disability in August 2007 (when she fell at work and injured her hip) through January 2011 (the last treatment of record prior to the date of the ALJ's decision) (Tr. 18-19).  The ALJ indicated his reliance on the September 28, 2009 residual functional capacity findings of state agency physician Dr. Janet Rodgers, who reviewed the medical evidence and assessed an RFC for light work (Tr. 425-33).  He gave significant weight to the findings and opinion of Dr. Thomas Tkach, the orthopedic surgeon who performed plaintiff's hip replacement surgery, reporting upon three-month follow-up examination on September 16, 2009, that plaintiff was "doing great," with full range of motion and no pain in her right hip (Tr. 393), and was able to return to work with no restrictions (Tr. 384).   The ALJ also assigned significant weight to

the case analysis report of state agency review physician Dr. Carmen Bird, dated January 13, 2010, affirming Dr. Rodgers' earlier RFC assessment upon inclusion of Dr. Tkach's report (Tr. 439).

At step four, the ALJ found that plaintiff was unable to perform her past relevant work as a corrections officer because that job was performed at the light exertional level (Tr. 20).   Finally, at step five, the ALJ found that given the RFC assessment, and considering plaintiff's age (38 years old when she applied for SSI benefits), education (high school), past work experience, and the minimal effect of her non-exertional limitations on the occupational base of sedentary work, application of Rule 201.28 of the Grids was appropriate, directing a finding of not disabled (Tr. 20-21).

IV.     **Plaintiff's Motion**

A.     **Mental Impairment**

Plaintiff first argues that the Commissioner's determination should be reversed or remanded for further proceedings because the ALJ failed to consider, at any step of the sequential evaluation process, the ample evidence of plaintiff's depression, anxiety, panic attacks, and other symptoms of her mental impairment.

Under the regulations, where the evidence establishes the presence of a medically determinable mental impairment the ALJ must use a "special technique" at steps two and three of the sequential evaluation to evaluate the severity of the impairment.  20 C.F.R. § 416.920a(a); *see Petrie v. Astrue*, 412 F. App'x 401, 408 (2d. Cir. 2011); *Kohler v. Astrue*, 540 F.3d 260, 265–66 (2d Cir. 2008); *see also* 20 C.F.R. § 416.908 ("What is needed to show an impairment"); *Baszto v. Astrue*, 700 F. Supp. 2d 242, 247 (N.D.N.Y.

2010) (application of special technique requires threshold determination as to whether claimant has a medically determinable mental impairment; citing 20 C.F.R. § 404.1520a(b)(1), (2) ("[The ALJ] must *first* evaluate [a claimant's] pertinent symptoms, signs, and laboratory findings to determine whether [the claimant] ha[s] a medically determinable mental impairment [ ] .... [the ALJ] must *then* rate the degree of functional limitation ...") (emphasis in *Baszto*).   If a medically determinable mental impairment is established, the ALJ must rate the degree of the claimant's functional limitation resulting from the impairment in each of four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation.  20 C.F.R. § 416.920a(c)(3).  Pursuant to the regulations, the ALJ's written decision must "reflect application of the technique, and ... 'include a specific finding as to the degree of limitation in each of the [four] functional areas ....' "  *Kohler*, 540 F.3d at 266 (quoting 20 C.F.R. § 404.1520a(e)(2)).  This is most commonly accomplished through the use of a standard document known as a "Psychiatric Review Technique Form" ("PRTF"), which is ordinarily completed at the administrative review level by a medical or psychological consultant.  *Id.* (citing 20 C.F.R. § 404.1520a(e)); *see also Housser v. Colvin*, 2015 WL 162985, at *8 (W.D.N.Y. Jan. 13, 2015).

The court's review of the record in this case reveals that plaintiff did not allege disability based on a mental impairment in her April 2009 application for SSI benefits (*see* Tr. 101-06), nor did she indicate any concerns about her mental condition in a disability report submitted to the SSA in March 2010 with her request for an ALJ hearing (*see* Tr. 75-76; 156-62); in a report of recent medical treatment submitted to the Office of Hearings and

Appeals prior to the hearing (*see* Tr. 177); or in a health assessment completed on March 30, 2010 to establish primary care at Catholic Health System ("CHS") Primary Care Services (Tr. 456). The medical records further reflect that plaintiff first complained of anxiety and depression at a CHS visit on April 19, 2010 (Tr. 454). She was prescribed Pristiq, an anti-depressant (*id.*), which she continued to take through January 25, 2011, her last reported visit to CHS during the relevant period (Tr. 444). She testified at her hearing in May 2011 that she was still taking medication which "moderately" controlled her anxiety, and that she had not seen a psychiatrist or psychologist for depression or anxiety although she felt the need to do so (Tr. 37). There is no report of medical treatment between January 25 and June 15, 2011, the date of the ALJ's decision.

In addition, the record contains no medical source opinion evidence indicating that plaintiff suffered from a mental impairment that significantly limited her ability to do basic work activities for twelve consecutive months at any time during the relevant period, and no treating or consulting medical, psychiatric, or psychological source completed a PRTF or performed an assessment of plaintiff's functional limitations due to her mental problems. Presented with this record, the ALJ had no evidentiary basis upon which to make the threshold determination as to whether plaintiff had a medically determinable mental impairment in order to trigger application of the special technique for assessing the degree of functional limitation at steps two and three of the sequential evaluation process.

Accordingly, the court finds that plaintiff is not entitled to reversal or remand on the ground that the ALJ failed to consider the severity of plaintiff's mental impairment.

## B.    Credibility

Plaintiff also contends that the ALJ failed to properly assess plaintiff's credibility with regard to her testimony about the limiting effects of her pain and other symptoms.  The general rule in this regard is that the ALJ is required to evaluate the credibility of testimony or statements about the claimant's impairments when there is conflicting evidence about the extent of pain, limitations of function, or other symptoms alleged.  *See Paries v. Colvin*, 2013 WL 4678352, at *9 (N.D.N.Y. Aug. 30, 2013) (citing *Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999)).   The Commissioner has established a two-step process to evaluate a claimant's testimony regarding his or her symptoms:

> First, the ALJ must consider whether the claimant has a medically determinable impairment which could reasonably be expected to produce the pain or symptoms alleged by the claimant.  Second, if the ALJ determines that the claimant is impaired, he then must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms.  If the claimant's statements about his symptoms are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility.

*Matejka v. Barnhart*, 386 F. Supp. 2d 198, 205 (W.D.N.Y. 2005), *quoted in Hogan v. Astrue*, 491 F. Supp. 2d 347, 352 (W.D.N.Y. 2007); *see* 20 C.F.R. § 416.929.

The Regulations outline the following factors to be considered by the ALJ in conducting the credibility inquiry: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain.  20 C.F.R.

§ 416.929(c)(3)(i)–(vii); *see Meadors v. Astrue*, 370 F. App'x 179, 184 n. 1 (2d Cir. 2010).

The Commissioner's policy interpretation ruling on this process provides the following

further guidance:

> The finding on the credibility of the individual's statements cannot be based
> on an intangible or intuitive notion about an individual's credibility.   The
> reasons for the credibility finding must be grounded in the evidence and
> articulated in the determination or decision.   It is not sufficient to make a
> conclusory statement that "the individual's allegations have been considered"
> or that "the allegations are (or are not) credible."   It is also not enough for the
> adjudicator simply to recite the factors that are described in the regulations
> for evaluating symptoms.   The determination or decision must contain
> specific reasons for the finding on credibility, supported by the evidence in
> the case record, and must be sufficiently specific to make clear to the
> individual and to any subsequent reviewers the weight the adjudicator gave
> to the individual's statements and the reasons for that weight.

SSR 96-7p, 1996 WL 374186, at *4 (S.S.A. July 2, 1996).

As discussed above, in this case the ALJ found plaintiff's testimony and statements

of record regarding the intensity, persistence, and limiting effects of her pain and other

symptoms to be generally credible, but found that plaintiff's testimony regarding her

activities of daily living (indicating that she was able to clean, cook, wash dishes, make the

beds, vacuum, mop, shop, visit, drive, bathe, and dress herself) was inconsistent with her

allegations of disability (Tr. 17-18).   This determination was grounded on a thorough

discussion of the medical evidence, including reports of diagnostic testing and records from

treating, examining, and consultative medical sources, with particular reliance on the

findings and opinion of the treating orthopedic surgeon, and the RFC assessment and case

analysis report of the state agency physicians.   In the court's view, these findings have

substantial evidentiary support and are sufficiently articulated in the ALJ's decision to make

clear to plaintiff, to this court, and to subsequent reviewers the weight given to plaintiff's statements about her functional limitations, and the reasons for that weight.

As such, and upon review of the record as a whole, the court finds that the ALJ's credibility assessment in this case was performed in accordance with the requirements of the Social Security Act, its implementing regulations, and the weight of controlling authority. Accordingly, plaintiff is not entitled to reversal or remand on this ground.

### C.   Duty to Develop the Record

Plaintiff also contends that the ALJ failed to discharge his duty to develop the record regarding plaintiff's deteriorating condition from the spring of 2010 through the hearing date.  This contention is likewise rejected.

The Second Circuit has long recognized the proposition that, "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history even when the claimant is represented by counsel …." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (internal quotation marks omitted).  This duty "includes assembling the claimant's complete medical history and recontacting the claimant's treating physician if the information received from the treating physician or other medical source is inadequate to determine whether the claimant is disabled …," as well as "advising the plaintiff of the importance of such evidence." *Batista v. Barnhart*, 326 F. Supp. 2d 345, 353 (E.D.N.Y. 2004).  On the "flip-side" of this same proposition, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance

of rejecting a benefits claim." *Petrie v. Astrue*, 412 F. App'x 401, 406 (2d Cir. 2011) (internal quotation marks omitted).

In this case, the ALJ's determination reflects his consideration of the medical record regarding plaintiff's treatment at CHS from March 2010 to January 25, 2011 (the last treatment date of record prior to the date of the ALJ's decision) (*see* Tr. 19-20; 444-530). The ALJ noted that x-rays taken on April 20, 2010, showed "very minimal anterior vertebral body spurring" of the lumbosacral spine at L-4 and L-5, and "an essentially normal appearance" of plaintiff's right hip replacement (Tr. 19; *see also* Tr. 474-75). X-rays of the left hip taken on December 9, 2010, showed a "[t]iny ossicle adjacent to the superior lateral acetabulum" which was reported by the radiologist as a possible significant finding, but there was no evidence of fracture or other acute pathology (Tr. 19, 473).

The court's review of these treatment notes and reports indicates that the ALJ was presented with an adequate record of plaintiff's medical history for this period, reflecting the treatment she received at CHS for complaints of back, neck, and hip pain; sinusitis; and asthma (*see* Tr. 452-95), in addition to the prescription for control of her anxiety and depression. Significantly, no treating source at CHS reported any functional limitation of plaintiff's ability to perform work-related activities on the basis of any of these diagnoses. As such, the record before the ALJ contained no obvious gaps or deficiencies to trigger the affirmative obligation to seek additional information before issuing his denial of plaintiff's application for SSI.

Accordingly, plaintiff is not entitled to remand or reversal on the ground that the ALJ failed to discharge his duty to develop the record.

**D.      Closed Period of Disability**

Finally, plaintiff contends that the ALJ failed to consider whether plaintiff qualified for a closed period of disability between August 2007 (the alleged onset date) and September 2009 (when she was cleared to return to work upon recovery from hip replacement surgery).  According to plaintiff, the medical record establishes a history of frequent emergency room visits to address the deteriorating condition of her right hip precipitating the eventual replacement surgery, yet the ALJ made no effort to ascertain the extent to which this condition limited her functional capacity for work during this period.

There is indeed substantial support for plaintiff's reading of the medical records covering this period.  However, as discussed, the ALJ thoroughly reviewed these same records in making his assessment of plaintiff's RFC for work at the sedentary exertional level, and the court's review of the record as a whole confirms the lack of diagnostic findings, medical source opinions or reports, or other documented evidence of plaintiff's work-related functional limitations inconsistent with this assessment.  In the absence of such proof, plaintiff cannot meet her burden to demonstrate the inability to engage in substantial gainful work for twelve consecutive months at any time during the asserted closed period.  To rephrase the Second Circuit's admonitions in *Veino* and *DeChirico*, as long as the ALJ's determination rests on adequate findings supported by evidence with probative force, this court cannot substitute its judgment for that of the ALJ, even if there is substantial evidence weighing against it.  *See Veino*, 312 F.3d at 586; *DeChirico*; 134 F.3d at 1182.

Accordingly, plaintiff is not entitled to reversal or remand on the ground that the ALJ failed to consider plaintiff's eligibility for a closed period of disability from August 2007 through September 2009.

## **CONCLUSION**

For the foregoing reasons, the court finds that the ALJ's decision is based on correct legal standards and supported by substantial evidence, and the Commissioner's determination must be upheld.  Therefore, plaintiff's motion for judgment on the pleadings (Item 13) is denied, the Commissioner's motion for judgment on the pleadings (Item 16) is granted, and the case is dismissed.

The Clerk of the Court is directed to enter judgment in favor of the Commissioner, and to close the case.

So ordered.

\s\ John T. Curtin
_____
JOHN T. CURTIN
United States District Judge

Dated: April 15, 2015
p:\pending\2013\13-341.ssi.apr15.2015